1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL J. WALLACE,<br><br>                Plaintiff,<br><br>vs.<br><br>LIVE NATION WORLDWIDE, INC., a<br>Delaware Corporation doing business in<br>Washington, STARPLEX CORPORATION<br>d/b/a CROWD MANAGEMENT SERVICES, an<br>Oregon Corporation doing business in<br>Washington, and JOHN and JANE DOE<br>DEFENDANTS 1 through 5,<br><br>                Defendants. | No. C20-799 RSM<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

This matter comes before the Court on Defendant Live Nation Worldwide, Inc.'s ("Live Nation")'s Motion for Summary Judgment. Dkt. #24. Plaintiff Michael Wallace has filed an opposition brief. Dkt. #27. The Court has determined that oral argument is unnecessary, and, for the reasons stated below, GRANTS this Motion.

## II.     BACKGROUND

On June 29, 2018, Michael Wallace attended a "Dead & Company" concert at the Gorge Amphitheatre Campground ("The Gorge") in George, Washington. *See* Dkt. #25-1 Ex. A ("Wallace Dep."), 20:3-21:15. At roughly 3:30 p.m., Mr. Wallace approached a man lying asleep in the grass with a dog lying next to him. *Id*. at 22:2-25. It appeared this man had passed out in a "very uncomfortable" manner rather than intentionally lying down to go to sleep. *Id*. A woman

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 1

approached and expressed concern for the health of this unconscious man. *Id*. Mr. Wallace agreed to check on him. He saw that there was a dog lying down next to the man, looking around "in a concerned manner." *Id*. at 23:15-18. This dog was approximately 60 to 70 pounds and "muscular." *Id*. at 33-16-19. According to Mr. Wallace, the dog was not "aggressively barking" or showing any signs of aggression but was acting "worried" about its owner. *Id*. at 23:19-24.

Mr. Wallace has previously owned several dogs and considers himself "a dog person" who is "a good judge of the demeanor and spirit of a dog." *Id*. at 37:15-17. His dog has bitten someone before, and he himself has been bitten by a dog, though neither bite was serious. *Id*. at 48:7-25, 49:10-19, 50:21-25, 51:1-6.

Mr. Wallace states in deposition that he was about eight feet away and slowly approaching the man when the dog "charged and leaped at me." *Id*. at 24:7-17. Mr. Wallace put up his hands to defend himself and the dog latched onto his right hand and started "chewing and shaking his head… and biting down." *Id*. at 24:22-25. He pulled his hand "very hard," separated from the dog, and realized he was bleeding profusely. *Id*. at 25:11-16. He applied pressure to the wound, raised his hand above his head, and people gathered around to help. *Id*. at 25-26. He returned to his car. Eventually a registered nurse applied first aid. *Id*. at 27. Event staff arrived. *Id*. at 28. The police were called to secure the situation, the dog, and the dog owner. *Id.* The police asked the owner to put a muzzle on the dog—the dog had a muzzle on its collar that was not on at the time. *Id*. at 29:3-8. Event staff took Mr. Wallace to the medical tent located at the campground. *Id*. at 30. The tent doctor examined the wound and determined that Mr. Wallace needed to go to the local emergency room. *Id.* What happened next in terms of medical treatment, recovery, and billing is not presented to the Court.

The Gorge Amphitheatre and associated campground are leased and operated by Defendant Live Nation. Dkt. #28-1 ("Wilde Dep."), 15:17-25. To gain access, concertgoers must pass through

security checkpoints staffed by Defendant Starplex Corporation. *Id.* at 55:5-8. Starplex staff were instructed in Live Nations' rules and policies for the venue. Live Nation has a prohibited items policy, which excludes non-service animals from the campground. Wilde Dep. at 40:10-25. This policy is communicated to concertgoers via the venue website, social media, email, and signage at the venue. *Id.* The Gorge campground FAQs, posted online, state:

> "***Can I bring my dog?***"
>
> "No. Do not bring any pet whatsoever, not because we don't like them – we are all animal lovers here – but it is cruel and unfair to the pet to leave it alone in the campground or parking lot, locked up or in a car or tent where it may suffer from extreme heat. When we see a pet in a car or running around the camp ground unattended, we will alert the authorities and your vehicle may be entered and the pet taken to a shelter for its own welfare. You may be subject to prosecution for cruelty to animals. Service Animals are permitted however."

Dkt #25-1 at 150. Elsewhere on the Gorge website there is a "rule" stating, "[b]esides service animals, no dogs or pets are allowed in the campground." Dkt. #28-4. Signage at the venue states that pets are not allowed but service animals are permitted. Dkt. #28-3.

Mr. Wallace now brings this action against Defendants Live Nation and Starplex. Defendant Live Nation removed to this Court on May 27, 2020, based on diversity jurisdiction. Dkt. #1. The Amended Complaint alleges Defendants negligently allowed a non-service dog to pass through security checkpoints and includes causes of action for premises liability and common law negligence. *Id.* Live Nation moves for summary judgment on all claims, and Starplex has filed a notice of joinder. Dkts. #24 and #26.

## III.   DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Common Law Negligence Claim**

By statute, dog owners in Washington are strictly liable for dog bites in a public place.  *See* RCW 16.08.040.  "The use of the term 'owner' evidences a legislative intent to exclude from liability persons who are mere keepers or possessors of a dog."  *Beeler v. Hickman*, 50 Wn. App. 746, 752, 750 P.2d 1282 (1988).  Under state common law, "only the owner, keeper, or harborer of the dog is liable for [a dog bite]."  *Clemmons v. Fidler*, 58 Wn. App. 32, 34, 791 P.2d 257 (1990); *see also Markwood v. McBroom*, 110 Wn. 208, 211, 188 P. 521 (1920).  "Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or harborer thereof, as affecting liability for injuries caused by it."  *Markwood*, 110 Wn. at 211.  "The possession of the land on which the animal is kept, even when coupled with permission given to the third person to keep it thereon, is not enough to make [the land's] possessor liable as a

harborer of the animal." *Harris v. Turner*, 1 Wn. App. 1023, 1030, 466 P.2d 202 (1970).  In any event, liability is only established where a defendant had "ineffective control of [the dog] in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence." *Arnold v. Laird*, 94 Wn.2d 867, 871, 621 P.2d 138 (1980).

Live Nation argues Mr. Wallace has failed to present evidence that it owned, kept, or harbored this dog. Dkt. #24 at 9.  Mr. Wallace maintains that Live Nation kept or harbored this dog because of its policy to not permit pets at the campground and because "Live Nation claims that [sic] will to take possession of any unattended animals on site and refer matters to Animal Control." Dkt. #27 at 8. Plaintiff submits no evidence that Defendants, prior to the attack, in fact took any step to take possession of this animal or contact animal control.  The use of the term "unattended" for this dog would be a mischaracterization of the record.  It is undisputed that concerned onlookers were trying to ascertain the condition of the dog's owner prior to the attack.  It is undisputed that the dog was right next to its owner.  There is no evidence to suggest to a reasonable jury that Defendants would have seen this dog and concluded it was unattended prior to the attack.

Also absent from the record is any evidence that this dog was in fact a pet rather than a service animal, or that Defendants knowingly allowed a non-service animal to enter the venue or campground, or that they failed to ask the dog owner whether or not this was a service animal. Plaintiff presents no evidence that Defendants knew of this dog's dangerous propensities prior to the attack.

The Court concludes that Defendants were not the owners of this dog.  At no point did Defendants take any step to control this animal.  Mr. Wallace does not articulate some other basis for Defendants to be liable under common law negligence.  Given all of the above, the Court concludes that Mr. Wallace has failed to make a sufficient showing on the above essential elements of his negligence claims.  Dismissal of this claim is warranted as a matter of law.

1

### C.  Premises Liability Claim

2

3        "A landowner is liable for an invitee's physical harm caused by a 'condition on the land'

4   only if the landowner: (a) knows or by the exercise of reasonable care would discover the condition,

5   and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should

6   expect that [invitees] will not discover or realize the danger, or will fail to protect themselves against

7   it, and (c) fails to exercise reasonable care to protect [invitees] against the danger." *Oliver v. Cook*,

8   194 Wn. App. 532, 544 377 P.3d 265 (2016) (quoting *Iwai v. State*, 129 Wn.2d 84, 93-94, 915 P.2d

9   1089 (1996)); *see also* Rest. (Second) of Torts § 343 (1965).

10        Live Nation cites to the recent Washington Supreme Court case *Blanco v. Sandoval*, which

11  held there was no basis in that case "to find the dog was a dangerous condition on the land, as

12  required to establish a duty under Restatement (Second) § 343 or § 342."  197 Wn.2d 553, 562–63

13  (2021).  That Court stated, "[u]nder our cases, the conditions generally associated with premises

14  liability duties involve physical features of the property," found that "petitioner's reliance on *Oliver*

15  is unavailing," and ruled that *Oliver* "is best described as an outlier to the extent some language

16  suggests the court there considered an animal to be a condition on the land."  *Id*. at 563 (citing

17  cases).

18

19        Mr. Wallace attempts to distinguish *Blanco* by arguing that Defendants in this case "retained

20  control over the property, including common areas where the subject incident occurred."  Dkt. #27

21  at 11.  The Court agrees that *Blanco* discussed at length the question of the liability of a defendant

22  landlord who did *not* control the premises, whereas here Live Nation is a tenant who *did* control the

23  premises.  However, this factual distinction is irrelevant if Mr. Wallace cannot demonstrate that the

24  dog here was a "condition on the land" under Washington law.  Viewing the evidence and drawing

25  inferences in the light most favorable to Mr. Wallace, the Court nonetheless finds that he has failed

26  to do so.  There is nothing in the record to suggest that this dog or that dogs in general were a

27

physical feature of the property.  Instead it is clear that they come and go with their concertgoer owners.  The Court, applying Washington state law, will not deviate from the above rulings in *Blanco.*  Mr. Wallace has failed to demonstrate an essential element of his claim, and dismissal of this claim is therefore warranted as a matter of law.

## IV.    CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Live Nation's Motion for Summary Judgment, Dkt. #24, is GRANTED. All of Plaintiff's claims are DISMISSED. This case is CLOSED.

DATED this 6th day of August, 2021.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7